UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

| UNITED STATES OF AMERICA | * | CRIMINAL DOCKET |
| --- | --- | --- |
| | * | |
| VERSUS | * | NO. 15-564 |
| | * | |
| RAMON DE LA CERDA, ET AL | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * *

## JOINT MOTION TO RECUSE
## ASSISTANT UNITED STATES ATTORNEY ANIBAL ALANIZ

**NOW INTO COURT,** through undersigned counsel, come the defendants, Ramon de la Cerda, Salomon Robles, Juan Albert Mendez, and Jose Rolando Gonzalez, who respectfully request that the Court recuse Assistant United States Attorney Anibal Alaniz from this case, based on his prior representation of Mike Bueno, a co-defendant in this case. In support of his motion, the Defendants provide the following bases:

### RELEVANT FACTS

The Tri-City Bombers, according to the Government, developed as a gang in the Rio Grande Valley in the late 1980's. Second Superseding Indictment, Rec. Doc. 586 at 2-3 (describing the history of the Tri-City Bombers). The longtime leader of the gang is Rey Cervantes. *See* August 4, 2014 Affidavit of Special Agent Matthew Hiemstra in Support of Title III Warrant; Alex Robledo, "Law Officials Speak Out on Gang Problem," The Monitor, July 25, 1992 (referring to Cervantes as the leader of an emerging "splinter group" of the Tri-City Bombers). Cervantes controlled the gang from prison since his arrest in 1992 for the beating death a beach-goer and assaults on others with a group of Tri-City Bombers in South Padre Island. *See Garcia v. State*, 882 S.W.2d 856 (Tex. App. 1994) (describing offense). Following a trial, Cervantes was convicted of and sentenced to life. *Id*.

1

During that time period, Anibal J. Alaniz, a newly minted attorney, was beginning his law practice in Hidalgo County, TX and accepting court appointments to represent indigent defendants. In 1991, he was appointed to represent defendant Mike Bueno in connections with three Hidalgo Country criminal cases. These cases included charges arising from a July 18, 1990 arrest for Criminal Mischief for shooting a car (*State of Texas v. Mike Bueno*, Case No. CR-132-91-F), and an April 18, 1991 arrest for stealing a car and committing a murder in flight from law enforcement. *State of Texas v. Mike Bueno*, Case Nos. CR-0888-91, CR-0895-91.

Attorney Alaniz was appointed to represent then-19-year-old Bueno on the Criminal Mischief case on May 10, 1991. *See* Case No. CR-132-91-F, Appointment of Counsel, Exhibit A. In that case, Bueno was indicted by a Hidalgo County Grand Jury with the June 15, 1990 criminal mischief charge by shooting a Pontiac automobile and thereby causing between $750 and $20,000 in damage. *See* Case No. CR-132-91-F, Indictment, Exhibit B.

On October 28, 1991, where Attorney Alaniz appeared as his lawyer, Bueno pleaded guilty as charge and signed both Stipulation of Evidence and a Waiver of Jury filings which were countersigned by Attorney Alaniz. *See* Case No. CR-132-91-F, Plea Documents, Exhibit C. At a December 20, 1991 sentencing hearing, again with Attorney Alaniz present as his lawyer, Bueno was sentenced to 10 years in the Texas Department of Criminal Justice. *See* Case No. CR-132-91-F, Commitment, Exhibit D.

In the course of the representation, Attorney Alaniz spent more than three hours visiting with Bueno over the course of four jail visits, attended two pretrial hearings, and spoke with the prosecutor, for a total of 4.25 hours in legal services. *See* Case No. CR-132-91-F, Attorney Fees Expense Claim, Exhibit E.

In the second case, Bueno was indicted by a Hidalgo County Grand Jury with three separate charges, theft of property valued between $750 and $20,000, unauthorized use of a vehicle, and possession of stolen property valued between $750 and $20,000, by stealing a Chevorlet pick-up truck on April 17, 1991. *See* Case No. CR-888-91-F, Indictment, Exhibit F.

In the third case, Bueno was indicted by a Hidalgo County Grand Jury with two counts, murder and involuntary manslaughter, after fleeing from law enforcement attempting to pull over the stolen pick-up truck, running a stop sign, and crashing into another car and killing the driver, also on April 17, 1991. *See* Case No. CR-895-91-F, Indictment, Exhibit G.

Attorney Alaniz was appointed to represent Bueno in these two joined cases as well. Attorney Alaniz filed fourteen particularized motions for Bueno, including (1) a Motion to Quash the indictment in the murder case, (2) a Motion for Approval of Reasonable Attorney's Fees, (3) a Motion for the Production and Inspection of Evidence and Information Which May Lead to Evidence, (4) a Defendant's Written Election for the Jury to Set Punishment, (5) a Defendant's Application for Felony Probation from the Jury, (6) a Motion to Suppress Evidence, (7) a Motion to Receive Notice and Prohibit the Mentioning of Extraneous Offenses, (8) a Jackson v. Denno Motion for Hearing and Suppression of Any and All of his Written, Oral, or Recorded Statements or Conversations, (9) Trial Objections, (11) a Motion to Shuffle Jurors, (12) a Motion in Limine, (13) a Defendant's Motion to Be Tried in Civilian Clothes and Not Handcuffed in Front of the Jury, (14) a Motion for Discovery and Inspection of Evidence, and (15) a Motion to Quash the indictment in the theft case. *See* Case Nos. CR-895-91-F and CR-888-91-F, Motions, Exhibit H.

As trial approached in the case, Attorney Alaniz obtained a plea agreement for Bueno, who signed a Waiver of Jury forms and a Stipulation of Evidence, countersigned by Attorney Alaniz, on October 28, 1991. *See* Case Nos. CR-888-91-F and CR-895-91-F, Waiver of Jury form and

Stipulation of Evidence, Exhibit I. At a December 20, 1991 sentencing hearing, Bueno was sentenced to 10 years on the theft charge and 30 years on the murder charge, concurrent to each other and the sentence in the Criminal Mischief case. *See* Case Nos. CR-888-91-F and CR-895-91-F, Commitment Forms, Exhibit J.

In the course of the representation in these two joined cases, Attorney Alaniz spent more than seven hours visiting with Bueno over the course of five jail visits, spent nearly seven hours conducting investigation and outreach, including conversations with Bueno's mother, brother, and aunt, spent 19 hours researching, drafting, and filing motions, had two meetings with the prosecutor and another with co-counsel, and attended two in court hearings, for a total of 41.5 hours in legal services. *See* Case Nos. CR-888-91-F and CR-895-91-F, Attorney Fees Expense Claim, Exhibit K.

By the time that Bueno became Attorney Alaniz's client, Bueno had an extensive felony criminal records from his involvement with the Tri-City Bombers as a juvenile. Prior to turning eighteen years old, Bueno had been arrested eight times for the burglary of a building, twice for the burglary of a habitation, and twice for theft.[1] *See* Case Nos. CR-888-91-F, Presentence Investigation Report, Exhibit L.[2] Significantly, on information and belief, Rey Cervantes, the Tri-City Bomber's leader, who was several years older than Bueno, trained Bueno and other young, aspiring Tri-City Bombers to break into houses and steal cars, and Cervantes would then act as a fence to sell their stolen property.

---

[1] Once he became a legal adult, Bueno rapidly picked up adult misdemeanor charges including (1) possession of marijuana, (2) unlawfully carrying a weapon, for which he received probation that was revoked by his arrest on the Murder charges, (3) an evading arrest in Pharr, TX, and (4) an evading arrest in Edinburgh, TX.

[2] While the Report was stamped "Confidential" at the time it was drafted, this document now is a *non-confidential public record*, available to the public at the Hidalgo County Clerk of Court.

Without question, the crimes for which Attorney Alaniz represented Bueno were Tri-City Bomber-related offenses. In all likelihood, the pick-up truck that Bueno stole on April 17, 1991 was similarly intended to either be used in other Tri-City Bomber crimes or would have been provided to Cervantes to fence. Undoubtedly in the ten hours during which Attorney Alaniz met directly with Bueno between May and December 1991, Bueno's membership in the Tri-City Bombers would have necessary been a central subject as it related to Bueno's criminal history, his involvement in the offenses from which the cases arose, and the prospect of a plea and going to prison. In all likelihood, some of the present defendants, including Mr. De La Cerda and Mr. Gonzalez, his friends since childhood who had likewise become involved in the Tri-City Bombers, would also have been subjects of Bueno and Attorney Alaniz's privileged communications.

Over the nearly 20 years that Bueno was incarcerated for these offenses, things shifted. Attorney Alaniz went from being a young private criminal defense lawyer to a state prosecutor in Hidalgo County to an Assistant United States Attorney for the Southern District of Louisiana. Bueno went from being a teenaged Tri-City Bomber gang member to a veteran Tri-City Bomber convict and inmate to a leader of a yet more serious version of the Tri-City Bombers back on the streets of the Rio Grande Valley, according to the Government.

According to the present indictment, drafted and signed by now-Assistant United States Attorney Alaniz and secured at a grand jury at which he represented the Government, "Mike Bueno aka Mocho ("Bueno") was a member [of the Tri-City Bombers] with a rank of Major involved in trafficking controlled substances, laundering drug proceeds and in the commission of violent crimes. Bueno participated in breaking into a home to steal marijuana that resulted in the death of an individual. Bueno also directed the enforcement of the Enterprise rules and the collection of membership fees." Second Superseding Indictment, Rec. Doc. 837, at 6. Charged in the RICO

Conspiracy in Count 1 of the indictment, Bueno is identified in numerous overt acts as organizing numerous home invasions and robberies intended to steal large quantities of narcotics, and organizing interstate drug trafficking. Additionally, Bueno was charged in the conspiracy to distribute marijuana in Count 2, a death penalty-eligible home invasion robbery/murder in Counts 6, 7, and 8, a carjacking robbery in Counts 14 and 15, and possession of a massive quantity of marijuana in Count 17.

The discovery provided by the Government paints an even grimmer picture of Bueno's conduct, including evidence that Bueno ordered a homicide and then obstructed justice by having a younger Tri-City Bomber recruit take the charge. The discovery reflects that Bueno ordered the murder of Jerry Flores, a member of the rival Texas Chicano Brotherhood. Discovery Item, "245D-SA-62991--7." Flores had stabbed Tri City Bomber member, Arturo "China" Ramirez. Discovery Item, "245D-SA-62991—29." Bueno directed Ricardo "Ricky Rod" Rodriguez, alleged leader of the Alamo, Texas sect of the Tri City Bombers, to make the murder happen. *Id*. Flores was murdered on May 20, 2011 at a bar in Alamo, Texas. Naxiely Lopez, "Man Charged After Shooting Outside Bar," The Monitor, May 24, 2011.[3] After another Texas Chico Brotherhood member, Matias Molina, confronted Rodriguez about Flores's murder, Bueno also approved Molina's murder. Discovery Item, "245D-SA-62991—37."

The discovery also reveals that Bueno coordinated additional, unindicted home invasions, including one that resulted in a gunfight with the homeowners, and which yielded 80 kilograms of cocaine. Rene Vela Proffer, November 1, 2017.

---

[3] Reyes Alfredo Garcia was arrested for the murder of Jerry Flores. Naxiely Lopez, "Man Charged After Shooting Outside Bar," The Monitor, May 24, 2011. While Garcia was not the triggerman, he was apparently pressured by Rodriguez to "take the rap". Discovery Item, "245D-SA-62991—38." Apparently he did just that as he pleaded guilty for the murder and received a 25 year sentence on October 3, 2011. *See State v. Garcia*, Hidalgo County Case No. CR-3454-11-G.

Moreover, cooperating witnesses have indicated that Bueno "supervised" Tri-City Bombers' drug distribution network and that Bueno had a connection with the Gulf Cartel. Joseph Lopez Proffer, March 28, 2016. Cooperators indicated that Bueno lived primary from profits that he made stealing money and drugs during home invasions. Alberto Vela Proffer, March 23, 2015. *See also* Jared Taylor and Ana Ley, "Deputies Arrest 'Thugs,'" The Monitor, September 2, 2009 (noting Bueno's arrest for a "string of pseudo cop home invasions").[4]

Notwithstanding this history, the Government quickly elected not to seek the death penalty against Bueno and others allegedly involved with the home invasion murder coordinated by Bueno on April 12, 2012, and were granted leave not to seek the death penalty by Attorney General Sessions on August 9, 2017. More recently, the Government entered into a plea agreement with Bueno allowing him to plead guilty to only the Count 1 RICO Conspiracy with a pre-agreed sentence of 262 months pursuant to Fed. R. Crim. Pro. 11(c)(1)(C). Rec. Doc. 1552. The plea does not require Bueno to cooperate with the Government but does acknowledge that "[o]utside the prison system, [Bueno] was the leader of the Enterprise." *Id*. at 10. In the plea agreement, the Government agreed to Counts 2, 6, 7, 8, 14 and 15. To be sure, Bueno was very much at risk of a life sentence if convicted at trial, especially in light of his leadership role, his role in the home invasion/murder, the multiple gun charges pursuant to 18 U.S.C. sec. 924, his previous successful

---

[4] These charges were subsequently dismissed as to Bueno and another high ranking member of the Tri-City Bombers. Discovery Iterm, "Bueno,Mike aka mocho_NCIC-CCH." However, "younger members, who reported to Bueno . . . were each sentenced to six years in TDCJ for aggravated robbery." Federal Bureau of Investigation Report, May 18, 2011 (seeking authorization to investigate the Tri City Bombers) (245D-SA-62991 –1). The FBI has identified this as a common practice in the organization: "Because Bueno is the Captain of the TCB, he has at his disposal any and all members, prospects and/or associates of the TCB to conduct criminal activity on his behalf. It has been a common occurrence that charges are dropped against high-ranking members because the younger members are expected to and most always plead guilty and take the rap for their superiors. This allows high-ranking members to continue committing crimes and directing others to commit crimes without impunity." *Id*.

efforts to obstruct justice, the Government's ability to employ the unindicted homicides or other crimes as relevant conduct at sentencing, and his prior murder conviction.

The Defendants joined in this motion have not, by contrast, been granted such forbearance by the Government in this matter. First, the risk of the death penalty for the defendants charged in the homicide charged in Counts 19 and 20, including Jose Rolando Gonzalez, Salomon Robles, Juan Alberto Mendez, and, in particular, Ramon de la Cerda, continued for years longer. A Notice of Intent Not to Seek the Death Penalty was, however, filed late last year, on November 23, 2021, with respect to these defendants. Rec. Doc. 1486. More significantly, for the purposes of this motion, no plea agreement in the remote ballpark of the one granted to Bueno is available to any of the defendants, most of whom have less aggravated criminal history than Bueno, less aggravated roles in this overall offense, and similar conduct with respect to the homicide alleged against them. And yet, the Government has declined various plea offers and has dug in at 35 years as the only available resolution for these defendants – more than 13 years longer than the sentence granted to Bueno.

## LAW RELATING TO RECUSALS OF PROSECUTORS IN RELATION TO FORMER CLIENTS

Under various applicable sources of law governing this case, both an actual conflict of interest and the appearance of partiality requires recusal of a prosecuting attorney.

The practice of attorneys before the Southern District of Texas is governed by the Texas Disciplinary Rules of Professional Conduct. SDTX Local Rules, Appendix A, R. 1. The Texas Disciplinary Rules of Professional Conduct define the scope and obligations inherent in the attorney client relationship. These Rules require competency and diligence in the representation of clients, confidentiality with respect to information obtained by the attorney during the course of

8

the representation, and a duty of loyalty to act in the client's best interests. *See* Texas Disciplinary Rules of Professional Conduct, R. 1.01, 1.05, 1.06. Of course, the end of the attorney client relationship does not discharge the attorney's obligations to his former client. The duty of confidentiality persists with respect to former clients and obligates the attorney not to disclose confidential information and to refrain from using "confidential information of a former client to the disadvantage of the former client after the representation is concluded . . .." Texas Disciplinary Rules of Professional Conduct, R. 1.05(b). The rules also prohibited an attorney taking a position "adverse to the former client . . . if it is the same or a substantially related matter." Texas Disciplinary Rules of Professional Conduct, R. 1.09. The Comments to the rule explain,

> The "same" matter aspect of this prohibition prevents a lawyer from switching sides and representing a party whose interests are adverse to a person who disclosed confidences to the lawyer while seeking in good faith to retain the lawyer. The prohibition applies when an actual attorney-client relationship was established even if the lawyer withdrew from the representation before the client had disclosed any confidential information. This aspect of the prohibition includes, but is somewhat broader than, that contained in paragraph (a)(1) of this Rule [circumstances "in which such other person questions the validity of the lawyer's services or work product for the former client".]

Texas Disciplinary Rules of Professional Conduct, R. 1.09, Comment 4A.

The Comments also elaborate on the prohibition on adverse actions in "substantially related matters," explaining, "Although that term is not defined in the Rule, it primarily involves situations where a lawyer could have acquired confidential information concerning a prior client that could be used either to that prior client's disadvantage or for the advantage of the lawyer's current client or some other person. It thus largely overlaps the prohibition contained in paragraph (a)(2) of this Rule [barring the disclosure of confidential information]."

In additional to the Rules, the Texas legislature has specifically prohibited an attorney from prosecuting a former client. Tex. Code Crim. Proc. Art. 2.01 ("Each district attorney shall represent

9

the State in all criminal cases in the district courts of his district and in appeals therefrom, except in cases where he has been, before his election, employed adversely.") The Texas Court of Criminal Appeals explained the application of the statute,

> If a prosecuting attorney has formerly represented the defendant in the "same" criminal matter as that currently being prosecuted, he is statutorily disqualified. Tex. Code Crim. Proc. Ann. art. 2.01. The Texas Legislature has decreed that this conflict of interest is both obvious and actual, and the Texas Court of Criminal Appeals has so held. Thus, for example, if a prosecutor has previously represented a defendant in a burglary guilty-plea proceeding, he is statutorily disqualified from representing the State in a later probation revocation of that same burglary case. For a prosecuting attorney to "switch sides" in the same criminal case is an actual conflict of interest and constitutes a due-process violation, even without a specific showing of prejudice. This has been called a hard and fast rule of disqualification.

*Landers v. State*, 256 S.W.3d 295, 297 (Tex. Crim. App. 2008).

Where there is a link between the prior, private representation and the later prosecution by the same attorney, Texas courts have determined that violation of these provisions can implicate Due Process. *See Cooks v. State*, No. 06-07-00002-CR, 2008 Tex. App. LEXIS 855, at *19 (Tex. App. Feb. 6, 2008); *In re Goodman*, 210 S.W.3d 805, 814 (Tex. App. 2006) (reversed on other grounds). The Fourth Circuit reached the same conclusion, explaining,

> The relationship between an attorney and his client is a sacred one. In that relationship, the client must be secure in the knowledge that any information he reveals to counsel will remain confidential. The confidentiality of the attorney-client relationship is severely compromised, if not destroyed, when, after representing a client, a lawyer joins in the criminal prosecution of that client with respect to the identical matter about which the attorney originally counseled the client. Such switching of sides is fundamentally unfair and inherently prejudicial. Without question, the client's right to a fair trial, secured by the due process clauses of the fifth and fourteenth amendments, is compromised under these circumstances.

*United States v. Schell*, 775 F.2d 559, 565 (4th Cir. 1985)

Other courts, in reviewing the issue relating to a prosecutor's prosecution of a former client in a related matter have reached similar results. *See, e.g.*, *In re Ockrassa*, 165 Ariz. 576, 576, 799 P.2d 1350, 1350 (1990) (attorney's conduct in prosecuting a former client constituted an ethical

violation); *State ex rel. Keenan v. Hatcher*, 210 W. Va. 307, 315-16 (2001) ("While we do not go so far as to say a prosecutor is forever precluded from bringing charges against a former client because of the possibility that confidential information may inform the prosecutor's charging decision, the circumstance we face here, where the prosecutor represented the defendant in connection with the predicate convictions, simply raises too great a danger that a client's confidences may be betrayed."); Carrie Leonetti, "When The Emperor Has No Clothes III: Personnel Policies And Conflicts Of Interest In Prosecutors' Offices," 22 Cornell J. L. & Pub. Pol'y 53, 67, n.88. "Courts look to the circumstances surrounding the prior representation to determine whether disqualification is required." *Harvin v. Davis*, 2018 U.S. Dist. LEXIS 81567, at *18 (N.D. Tex. Mar. 1, 2018).

Similarly, the Rules create limitations on the kinds of representation that an attorney may engage in in successive roles at governmental counsel and private counsel. Texas Disciplinary Rules of Professional Conduct, R. 1.10. The Rule is intended to "prevent[] a lawyer from exploiting public office for the advantage of a private client." Texas Disciplinary Rules of Professional Conduct, R. 1.10, Comment 1. Specifically, Rule 1.10 prevents a lawyer from representing the Government "in a matter involving a private client when the lawyer had represented that client in the same matter while in private practice or nongovernmental employment . . . ." A "matter" includes "any . . . controversy, investigation, charge, accusation, arrest or other similar, particular transaction involving a specific party or parties . . . ." Texas Disciplinary Rules of Professional Conduct, R. 1.10(f). The Rule is intended to prevent the appearance of partiality to a Government attorney's prior client: "Where a public agency and a private client are represented in succession by a lawyer, the risk exists that power or discretion vested in public authority might be used for the special benefit of the private client. A lawyer

11

*should not be in a position* where benefit to a private client might affect performance of the lawyer's professional functions on behalf of public authority." Texas Disciplinary Rules of Professional Conduct, R. 1.10, Comment 3 (emphasis supplied). Rule 1.10 applies to prosecutors. *State v. Barnett*, 965 P.2d 323, 328 (NM 1998); ABA Standards for Criminal Justice Prosecution Function and Defense Function Standard 3-1.3 cmt., at 11 (3d ed. 1993) (applying this rule to prosecutors in criminal cases).

These Rules are consistent with the ABA's Criminal Justice Standards for the Prosecution Function, which provide,

> (c) The prosecutor should not participate in a matter in which the prosecutor previously participated, personally and substantially, as a non-prosecutor, unless the appropriate government office, and when necessary a former client, gives informed consent confirmed in writing.
>
> (d) The prosecutor should not be involved in the prosecution of a former client. A prosecutor who has formerly represented a client should not use information obtained from that representation to the disadvantage of the former client.

Standard 3-1.7.

Significantly, these Standards dictate that "[t]he prosecutor should avoid *an appearance of impropriety* in performing the prosecution function." Standard 3-1.2 (emphasis supplied).[5]

In this case, Bueno raised Attorney Alaniz's conflict of interest in a pro se motion. Rec. Doc. 1469. Bueno stated, "Counsel has failed [to move] for recusal of the prosecutor litigating said subject matter, wherefore, said prosecutor was defendant's defense counsel on previous conviction, thus, conflict of interest." The relief that Bueno sought in his motion was the

---

[5] The Standards similar require prosecutors to seek out ethical guidance where there is some ambiguity to the prosecutor concerning their ethical duty. Standard 3-1.2 ("A prosecutor should seek out, and the prosecutor's office should provide, supervisory advice and ethical guidance when the proper course of prosecutorial conduct seems unclear.") Similarly, the Department of Justice's own Guidelines require internal disclosure and review of any circumstance that might require recusal on the basis of "a conflict of interest . . . or . . . an appearance of a loss of impartiality." Justice Manual, 3-1.140.

substitution of his counsel, apparently to the end that substitute counsel would, among other things, move to recuse Attorney Alaniz on the basis of the urged conflict. Rec. Doc. 1469. The motion to substitute was denied without engagement of the prosecutorial conflict issues. Rec. 1503. Bueno subsequently pleaded guilty in this matter on January 19, 2022 and was sentenced, as discussed above, in the same proceeding. Rec. Doc. 1551, 1553.

The Defendants' position that Attorney Alaniz should be recused from this matter is predicated less on the adversity that might have animated Bueno's motion but instead on the significant appearance of partiality that the circumstances evoke. *See* ABA Model Rule 1.11, Comment (applying Rule 1.11 "regardless of whether a lawyer is adverse to a former client and are thus designed not only to protect the former client, but also to prevent a lawyer from exploiting public office for the advantage of another client.") The Defendants are unable to perceive any principled distinctions between the favorable outcome granted by the Government and the Government's insistence that the only available resolution of the Defendant's case requires a sentence that is literally off the Sentencing Guidelines chart.

With a century of collective experience as defense attorneys between counsel for the Defendants, undersigned counsel are aware of how small actions by our clients – a word of concern about our health or our families, a sad recollection of a difficult childhood – can transform a defendant from a person accused of a tragic crime to three-dimensional human being who merits some forbearance and leniency. The appearance of impropriety concerning Attorney Alaniz's prior representation of Bueno in an offense that is intrinsic to the overall Tri-City Bombers conspiracy arises from the possibility that – even if only subconsciously – Bueno might receive a more favorable result than his similarly situated co-defendants because of residue from Attorney Alaniz's attorney client relationship with Bueno.

But Bueno's good fortune has Due Process implications for the remaining Defendants, each of whom has a vested interest in an impartial decision-maker who is as open-minded about providing a fair resolution to Defendants De La Cerda, Gonzalez, Robles, and Mendez as he is to his former client, Bueno, whose plea agreement concedes that he was leader of the Tri-City Bombers, the RICO Enterprise at the center of this case.

## CONCLUSION

Based on the foregoing, the Defendants respectfully request that the Court recuse Assistant United States Attorney Anibal Alaniz from this case. Alternatively, in the event that the Court does not grant the relief requested on the record created by this pleading, the Defendants request a hearing on this matter and the disclosure from the Government of any additional evidence with bearing on Attorney Alaniz's representation of Bueno or any other bases for recusal.

Respectfully submitted,

/s/ William M. Sothern
WILLIAM SOTHERN
La. Bar No. 27884 – *Pro Hac Vice*
Law Office of William M. Sothern
1024 Elysian Fields Avenue
New Orleans, LA 70117
(504) 524-7922
billy@sothernlaw.com

/s/ Robert K. Loper
ROBERT K. LOPER
Texas State Bar No. 12562300
111 West 15th Street
Houston, Texas 77008
(713)880-9000 (Office)
bob@loperlaw.net

*Attorney for Ramon de la Cerda*

/s/ James Stafford
JAMES STAFFORD
Texas State Bar No. 18996900
Federal ID No. 5289
National Cash Register Bldg
515 Caroline St.
Houston, Texas 77002
713-228-3600
info@staffordkeyserbromberg.com

/s/ Joel H. Bennett
Joel H. Bennett
Texas State Bar No. 00787069
Federal ID No. 20649
17045 El Camino Real, Suite 214
Houston, Texas 77058
Telephone: 281-389-2118
Fax: 866-817-5155
Email: joel@searsandbennett.com

*Attorneys for Salomon Robles*

14

| | |
|---|---|
| */s/Juan L. Guerra, Jr.* | */s/ George D. Murphy, Jr.* |
| Juan L. Guerra, Jr. | George D. Murphy, Jr. |
| Texas State Bar Number: 24031407 | TB# 14697990 |
| 4101 Washington Ave. | 700 Louisiana, Suite 2350 |
| HOUSTON, TX 77007 | Houston, TX 77002 |
| Telephone: (713) 489-6839 | 713.658.1960 |
| | george@georgemurphylawyer.com |
| *Attorney for Jose Rolando Gonzalez* | *Attorney for Juan Albert Mendez* |

### CERTIFICATE OF SERVICE

This certifies that I electronically filed the foregoing pleading with the Clerk of Court by using the CM/ECF system as an ex parte sealed event and therefore have not provided a copy to counsel for the Government. All counsel for Mr. de la Cerda have been sent copies of the pleading via electronic mail on the date of filing.

/s/ *William Sothern*
WILLIAM SOTHERN, La. Bar No. 27884